## KELLY v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1923.)

No. 2119.

1. Jury ⊚⇒95—Impaneling of jury held without reversible error.

Where of a panel of 32 jurors, 2 had been excused, and 12 others had served upon a trial of the defendant a few days previously, which resulted in his acquittal, there was no reversible error in eliminating them and furnishing a list of the remaining 18 for peremptory challenges, though 2 of the 18 had been peremptorily challenged by accused in the former trial.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Criminal law ⬅448(16)—Obstructing justice ⬅15—Question as to rule held to call for opinion of witness, and immaterial under facts.**

In a prosecution under Criminal Code, § 65 (Comp. St. § 10233), for interfering with a seizure of property by prohibition agents, the court did not err in refusing to require government witness, on cross-examination, to answer inquiry whether he did not know that the rule was that "you cannot stop trucks unless you see liquor on them" the inquiry calling for an opinion of the witness, and the rule, if existing, being not warranted by law, and immaterial under the facts in the case.

3. **Criminal law ⬅368(1)—Statement of persons in charge of truck held admissible as res gestæ in prosecution for interfering with seizure of intoxicating liquors.**

In a prosecution under Criminal Code, § 65 (Comp. St. § 10233), for interfering with a seizure of liquor by prohibition agents, testimony that persons in charge of truck in answer to inquiry as to contents of truck stated that "it was none of their business," *held* admissible as a part of the res gestæ, though accused was not present at the time; it appearing that defendant with others came up immediately thereafter, and the truck was rushed off.

4. **Criminal law ⬅382, 1169(1)—Requiring defendant to testify as to means of livelihood not prejudicial and immaterial.**

In a prosecution for interfering with seizure of intoxicating liquors by prohibition agent, under Criminal Code, § 65 (Comp. St. § 10233), requiring defendant to testify, "I have no business," in response to inquiry. As to his means of livelihood, *held* immaterial and not prejudicial.

5. **Obstructing justice ⬅16—Evidence held sufficient to sustain conviction for interfering with seizure of intoxicating liquor.**

In a prosecution under Criminal Code, § 65 (Comp. St. § 10233), for interfering with a seizure of intoxicating liquor by prohibition agents, evidence *held* sufficient to sustain a conviction.

6. **Criminal law ⬅1159(3)—Finding of jury on conflicting evidence binding on appellate court.**

It is not the province of the Circuit Court of Appeals to pass upon questions of conflicting testimony, and finding of jury is binding upon it.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Joseph F. Kelly was convicted of interference with prohibition agent, and the removal of goods seized by such agent, in order to prevent effective seizure, and brings error. Affirmed.

William Curran and Samuel K. Dennis, both of Baltimore, Md., for plaintiff in error.

A. W. W. Woodcock, U. S. Atty., and Fredrick W. Brune, Asst. U. S. Atty., both of Baltimore, Md.

Before WADDILL, Circuit Judge, and WATKINS and WEBB, District Judges.

WADDILL, Circuit Judge. The writ of error in this case was sued out by the plaintiff in error, the defendant in the court below, and hereinafter so referred to, to reverse the judgment of the Maryland court, rendered on the 14th day of March, 1923, approving the verdict of the jury, and imposing a fine of $250 and costs against the defendant, and imprisoning him for nine months in the city jail at Baltimore.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The information against the accused was filed under section 65 of the Criminal Code (Comp. St. § 10233), and charged, first, that the defendant did unlawfully and forcibly assault, resist, oppose, prevent, impede, and interfere with Gerald L. Parker, being then and there a federal prohibition agent of the Bureau of Internal Revenue of the Treasury Department of the United States, then and there in the execution of his duties as such; second, that he did unlawfully rescue, attempt to rescue, and caused to be rescued property which had been seized by persons authorized by the provisions of the National Prohibition Act (41 Stat. 305) to make seizures, to wit, George G. Harmon and Gerald L. Parker, prohibition agents; and, third, that he did unlawfully remove and cause to be removed certain goods and property seized by certain officers of the internal revenue, to wit, the said George G. Harmon and Gerald L. Parker, in order to prevent the effective seizure and securing of said property by said officers.

The government's case briefly is that, on the night of the 29th of January, 1923, about 11 o'clock, while Parker and Harmon, two prohibition officers, were patrolling the streets of the city of Baltimore in their automobile, in the effort to discover and apprehend persons engaged in the transportation of intoxicating liquors in violation of the National Prohibition Act, and having under surveillance a certain warehouse on Homewood avenue, known and believed to be used as a distributing base for such liquors, they saw a large covered truck come out of the building. The truck passed the agents' car going at a high rate of speed, and was promptly pursued by them; the truck taking a circuitous route covering a distance of from 10 to 12 city squares, the speed varying from 20 to 30 miles an hour, when it was overtaken on Eager street, just west of Greenmont avenue, and in half a block of the defendant's home. The two men on the truck jumped off as it stopped, and tried to get away, leaving the engine running. They were overtaken and placed under arrest, and informed the agents in response to inquiries as to what the truck contained, that it was none of their business, and they endeavored to prevent a search of the truck. The two men were placed in the custody of a police officer who happened to be nearby, and it was determined to take the two men and the truck to the police station in the vicinity; the police officer having the men on the truck. Suddenly it was discovered that the men had been allowed to escape. The police officer, when asked for information as to the whereabouts of the men, answered with the inquiry, "What men do you want arrested?" The men having escaped, Agent Parker got upon the truck with the policeman, to proceed to the station, and upon his trying to get the truck in motion, he stalled the engine, and had to get off to crank it.

At this juncture, the police officer disappeared, or Parker did not see him thereafter, and while endeavoring to crank the car, a crowd appeared, coming pretty much all at once, the defendant, Kelly, being among them. Kelly immediately demanded of Parker what he was doing. The latter showed him his "badge," and told him who he was, and what he and his brother officer were doing. Kelly replied that "the badge" was no authority, and that he wanted to see some "authority,"

and took hold of Parker by the sleeve, and the crowd closed in upon Parker, and Kelly pulled and the crowd pushed him from in front of the truck to a point some feet in the rear and to the side of it. Agent Harmon in the meantime remained in the automobile, surrounded by a crowd. He did not know Kelly at the time, but saw some one holding onto Parker, and saw the crowd around him, and pushing him rapidly from the front of the truck to the rear. Parker says, "They ganged me on down to behind the truck." At this moment the truck was rushed off, some one not known to the agents jumping upon it, and the agents, after Parker had been released, proceeded after the truck some distance, but never succeeded in overtaking it, as it was going at a high rate of speed. While Parker and Harmon were thus surrounded, and as the truck was rushed off, Police Sergeant McSweeny appeared on the scene, his attention having been called to the gathering, and upon being informed by Harmon of his official position, and of the seizure of the truck, which was then in view and speeding away, and of the escape of the two men, he inquired what he could do, to which Parker responded, "There is nothing to be done now; the truck is gone; what can you do?" McSweeny thereupon ordered the crowd, Kelly being one of them, to disperse. In answer to a question as to what he observed as to Kelly's conduct, and whether he saw him holding Parker, McSweeny twice replied he had not seen it. The defendant was known to Agent Parker; the latter having within a year previously taken part in the execution of a search warrant on defendant's premises, only a half block from the scene of the present difficulty.

The two government agents testified fully as to the facts stated, and were positive in their recollection of the occurrences, and gave them in some detail. The defendant testified in his own behalf, and denied seizing and holding Parker, as also his participation in any wrong doing of any sort, and claimed that he was merely a casual passerby. The policeman and police sergeant referred to were called by the defendant as witnesses. The sergeant, however, knew nothing of what occurred until after the truck speeded away, and the policeman denied generally the officers' statements. The jury heard and saw the witnesses, and returned a verdict against Kelly under all three counts of the information, which was approved by the court, and judgment entered, from which action this writ of error was sued out.

[1] The assignments of error will be considered in the order made. The first relates to alleged errors in impaneling the jury; the specific grievance being that the trial court, upon the calling of the case, furnished the government and the defendant with a list of 18 jurors taken from the regular panel of 32, in order that each side might peremptorily challenge 3 persons. The court selected the 18 from a panel of 30, two having been excused, and eliminated the names of 12 jurors who had served upon the trial of the defendant a few days previous for infraction of the prohibition laws, which resulted in his acquittal, and this action was objected to because 2 of the 18 thus selected were of the 3 peremptorily challenged by the accused in the former trial. The government and the defendant each peremptorily challenged three of the 18, and the remaining 12 were sworn and impaneled to try the case.

Considering the action of the District Court in the light of the decision of this court, rendered in Tierney v. United States (C. C. A.) 280 Fed. 322,325, it will be seen that the same is free from reversible error. In that case, in the opinion of the court, and the dissenting opinion, the method of impaneling juries in federal courts is fully gone into, with the result that where District Courts have neither by standing rule adopted the state practice regarding the impaneling of juries, nor prescribed a method of their own, or made a special order in the particular case, the manner and method of impaneling the jury is within the discretion of the trial court, with the limitation only that, in the absence of such a rule, the court must so proceed as not to hinder or embarrass the accused in the exercise of his constitutional and statutory rights regarding the selection of juries; care being at all times taken that the accused be assured a fair and impartial trial. The action of the trial court in eliminating from the second jury those serving on the first certainly tended to impartially administer justice alike to the accused and to the government, as it was desirable, as far as possible, that the two cases should be kept clear, one from the other, in the minds of the jury. Moreover, it does not follow either that the court knew, or, if it did, that it was material what jurors were peremptorily challenged in the first case by the defendant, in making up the second panel. The defendant was accorded his full rights of three peremptory challenges in the second case, with leave to challenge any of the remaining 12 sworn for his trial, for cause, if he desired to do so as called, which privilege it seems was not exercised. It will not be inferred either that jurors peremptorily challenged in the first case would have been peremptorily challenged in the second, nor that the court, if such jurors had been challenged for cause, would not have afforded the defendant full protection looking to securing impartial persons on the jury.

[2] The second assignment of error relates to the action of the court in not requiring a government witness to respond on cross-examination to the inquiry, "Don't you know that the rule in this jurisdiction is that you cannot stop trucks unless you see liquor on them?"

This assignment is clearly without merit. At most the inquiry called for the opinion of the witness, which was not of importance; and, moreover, if in point of fact such rule existed, it was alike not warranted by law, and immaterial under the facts in this case.

[3] The third assignment of error relates to the fact that the two persons found in charge of the truck, placed under arrest, and who subsequently escaped, informed the government officials who inquired as to the contents of the truck that "it was none of their business;" they attempting at the time to prevent search of the truck.

The theory on which this assignment is based is that the accused was not present, and hence that nothing that was said could be used against him. Perhaps a sufficient answer to the objection is that it relates to an immaterial matter, since no information was given in the answer excepted to, and, if it be said that the refusal to give information was prejudicial in character as bearing on what the truck contained, still it is not half so much so as the attempt of the persons so answering to

get away when first found on the truck, and their subsequent escape from the police officer. Again, it cannot be said that what occurred, so far as the truck and its contents were concerned, was not but part of what quickly followed when the defendant and his cohorts arrived on the scene. The government's evidence, which the jury manifestly believed, was to the effect that, upon this truck being seized, the two persons whose statements are the subject of this exception, were found in charge of the truck; that they jumped off, leaving the engine running; that they were promptly placed under arrest, quickly made their escape, and, upon the government officials seeking to further man and hold the truck, they were seized by the defendant and the crowd acting in concert with him, and the truck rushed off. These several happenings were so related one to the other, and followed in such quick succession, as to make what occurred in connection with the seizure and making away with the truck, in effect, a single and continuous transaction, and the objectionable testimony is therefore clearly admissible as part of the res gestæ.

[4] The fourth assignment of error relates to the question asked defendant on cross-examination whether he had any means of livelihood.

Aside from the immateriality of this inquiry, the circumstances under which it was asked and answered shows clearly there was no prejudicial or reversible error, which occurred in connection therewith. The defendant, in answer to the question as to his acquaintance with Policeman Caton, replied that he knew him casually; that he had lived in the community all his life, and many persons knew him that he did not know; and to the further inquiry if he did not know pretty well what was going on in the neighborhood, replied, "Well, no, I never interfere with other people's business." He was then asked what his business was, and he replied that he was out of business entirely, following which the government made the inquiry, objected to, "you have no means of livelihood," and to which defendant replied, over his objection, "I have no business."

The entire subject of this assignment shows its lack of merit, as well for want of materiality, as because there was nothing of which the defendant could especially complain.

[5, 6] The next and last assignment of error relates to the refusal of the court to strike out the testimony of the government's witness, and to the sufficiency of the same to sustain the verdict and judgment of the court. The action of the court complained of in this respect is to our mind entirely free from error. The jury saw and heard the witnesses testify, and from their verdict believed the government's evidence, and not that of the defendant. The conflict between the two was sharply drawn, and that of the government, if accepted and believed by the jury, was ample to sustain their verdict. It is not the province of this court to pass upon questions of conflict in testimony. The jury are triors of the facts, and, having acted in this respect strictly within their rights, their finding is binding upon the court. We may say, in this connection, that so far as we can judge, from a careful review of the testimony, we fully concur in the conclusion reached

by the jury, as there was but one result that could or should follow in the light of all that occurred and took place in connection with the transaction. The jury manifestly refused to accept the defendant's explanation, and disbelieved the evidence of the policeman Caton, which we think the record and circumstances fully warrant and sustain.

The judgment of the District Court will in all respects be approved and affirmed.

Affirmed.