**ALBIZU et al. v. UNITED STATES.***
No. 3174.

Circuit Court of Appeals, First Circuit.
Feb. 12, 1937.

*Writ of certiorari denied 57 S.Ct. 940, 81 L.Ed. —.

Arthur D. Hill, of Boston, Mass., and Isadore Polier, of New York City (Francis G. Goodale and Mark DeWolfe Howe, both of Boston, Mass., Gilberto Concepcion de Gracia, J. M. Toro Nazario, Carlos D. Vazquez, Juan J. Fuertes, all of San Juan, P. R., and Vito Marcantonio, of New York City, on the brief), for appellants.

Amos W. W. Woodcock, Sp. Asst. to Atty. Gen., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This in an appeal from a judgment of the District Court of the United States for the District of Puerto Rico against Pedro Albizu Campos, Juan Antonio Corretjer, Luis G. Velazquez, Clemente Soto Velez, Erasmo Velazquez, Julio H. Velazquez, Juan Gallardo Santiago, and Pablo Rosado Ortiz.

The defendants were all indicted under three counts for conspiracy among themselves and with divers other persons whose names are to the grand jurors unknown, to overthrow, put down and destroy by force the government of the United States, and to oppose by force the authority of the United States. It was alleged in the first count as part of said conspiracy that the defendants, who were leaders, officers, and active members of the Nationalist Party of Puerto Rico, one of the duly organized political parties of Puerto Rico, undertook to procure, induce, incite, and encourage the members of the said Nationalist Party and divers other persons whose names are to the grand jurors unknown, to join with them to bring about the political independence of Puerto Rico from the United States by force and violence, and by an armed revolution against the United States.

It was alleged as a further part of said conspiracy that the defendants by personal solicitations, public speeches, and by writing and printing articles in certain newspapers, and by distributing publicly throughout Puerto Rico printed circulars, would urge the people of Puerto Rico to arm themselves in order to bring about the political independence of Puerto Rico from the United States by force and violence.

It was alleged as a further part of said conspiracy that the defendants would procure and cause to be procured by members of said Nationalist Party firearms, ammunition, other weapons, and military equipment, the exact description of which is to the grand jurors unknown, for the aforesaid purpose.

It was alleged as a further part of said conspiracy that the defendants would establish, maintain, and cause to be established and maintained by said Nationalist Party, its national council, municipal councils, and other branches, and by its officers, members, and other persons to the grand jurors unknown, recruiting stations located in the several cities and towns of Puerto Rico where they would register, recruit, and enlist, and cause to be registered, recruited, and enlisted members of said Nationalist Party for military service in a so-called Liberating Army for the aforesaid purpose.

It was alleged as a further part of said conspiracy that the defendants would direct, drill, and cause to be directed and drilled in military formations various groups of the members of said Nationalist Party, said groups being designated as Cadets of the Republic, or enlisted soldiers of the Liberating Army, and would give and cause to be given to said groups military instructions, including instructions in the use of firearms and other weapons.

In the second count it was further alleged that the said defendants did unlawfully, knowingly, and willfully conspire and agree with each other and with divers other persons to commit offenses against the United States, that is to say, to incite rebellion and insurrection against the authority and laws of the United States.

That it was a part of said conspiracy that the defendants would persistently and continuously urge and attempt to persuade a large number of persons by public speeches, written articles in various newspapers, circulars, and other writings, and radio broadcasts, that the political independence of Puerto Rico from the United States should be brought about by force and violence and by an armed revolution against the United States, in which the defendants individually and as leaders, officers, and members of the Nationalist Party of Puerto Rico would take a leading and active part.

And it was further alleged as part of said conspiracy that the defendants would utilize the organization, machinery, resources, and personnel of said Nationalist Party, its national council, and the various municipal councils for the aforesaid purpose.

Then follows in said second count allegations of certain overt acts, including delivery of speeches, public meetings, printing and circulating in Puerto Rico of certain newspapers containing articles and written statements and accounts of speeches, which persistently and continuously urged, incited, and exhorted the members of the Nationalist Party to arm themselves in order to bring about the political independence of Puerto Rico from the United States by force and violence and by an armed revolution against the United States.

In the third count it was alleged that it was a part of said conspiracy that the defendants, through and by means of the Nationalist Party of Puerto Rico, would open and cause to be opened recruiting stations for the recruiting and enlistment of soldiers in Puerto Rico to engage in armed hostility against the United States, and sets forth several overt acts by which one or more of the several defendants assisted in registering, enlisting, and recruiting members of the Nationalist Party and other men as soldiers to be known as the Liberating Army, for the purpose of, engaging Puerto Rico in armed hostility against the United States, and sets forth certain overt acts in the carrying out of said conspiracy.

Upon trial before a jury all of the said defendants were convicted. The defendants Albizu, Corretjer, Luis F. Velazquez, Julio H. Velazquez and Juan Gallardo Santiago were convicted on all three counts; the defendants Clemente Soto Velez and Erasmo Velazquez were convicted under the first and second count; and the defendant Pablo Rosado Ortiz was convicted under the first and third counts. Each defendant was thereupon sentenced.

Each of the defendants appealed from the judgment of the District Court and assigned eighty-six errors, many of which are clearly without merit. The ones on which the defendants rely before this court were argued under the following heads:

1. Alleged error in the method of selecting the jury for the trial of the defendants.

2. Denial of a motion in arrest of judgment on the ground inter alia that three of the trial jurors had, prior to the trial, concealed their prejudice against the defendants.

3. That competent and relevant evidence was lacking to sustain the verdict as to any of the defendants.

4. That the District Court improperly admitted and allowed to remain on the record irrelevant and incompetent evidence, which had the result of inflaming the jury against the defendants.

5. That the District Court erred in allowing the United States attorney in his argument to the jury to make unfair remarks about the character of one of the defendants.

6. That the District Court in effect erroneously directed a verdict of guilty against the defendants Clemente Soto Velez and Erasmo Velazquez by instructing the jury that if in the opinion of the jury a certain handbill alleged to have been printed and circulated by said two defendants was issued for the purpose of inciting a rebellion or insurrection, then that alone constituted a conspiracy.

7. That the District Court erroneously instructed the jury that if a person, by speech or otherwise, uses language or his conduct is reasonably calculated to incite others to crimes of violence, then he is guilty under the second count, and, further, if one defendant by public speech or by circular or by an unauthorized article in a newspaper or magazine used language calculated to incite, and if it is done for the purpose of inciting the people to oppose the authority of the United States by force, then that makes out that conspiracy.

8. The District Court erroneously refused to admit evidence offered by the defendants concerning the program of the Nationalist Party.

■ As to the assignment of errors relating to the selection of the jury, there is only one act of Congress relating to the drawing of jurors in the federal courts which requires that the persons who are summoned as jurors must be drawn publicly from a box containing at least 300 names. Other than this, unless a federal court shall, by order, adopt the state practice, the method of selection is within the control of the federal courts, subject to any limitation placed thereon by Congress,

or recognized by the settled principles of criminal law essential to securing an impartial jury. Pointer v. United States, 151 U.S. 396, 405–409, 14 S.Ct. 410, 38 L.Ed. 208.

On July 20, 1936, the court ordered the jury commissioner and the clerk of the court to draw from the jury box containing 300 names, in the manner provided by law, the names of 40 persons to serve upon the panel of petit jurors for the trial of this case, returnable July 27, 1936.

On July 24 the marshal, reporting that he was unable to find several of the persons drawn on July 20, a second order was issued by the court for the jury commissioner and clerk to draw, in the manner provided by law, the names of 15 additional jurors. On venires issued to the marshal, he made a return on July 27 that he had summoned 15 of the jurors thus selected; a second return on the same day that he had summoned 16 more jurors; a third return on the same day that he had summoned 4 more, or a total of 35; and a further return on July 27 that he had summoned 11 additional jurors. Thus it appears from the record that a total of 46 jurors were summoned from which to select a jury for a second trial of the defendants.

When the persons thus summoned were called on the day of the trial, only 32 appeared and qualified, the remainder either not appearing or having been excused by the court for cause. Two jurors who were summoned at a former trial of the defendants, but who were not present at the first trial, were added, bringing the number appearing to 34. One of the two who were summoned for the former trial was also excused by the court, so that for the purpose of the second trial there were 33 jurors available, all of whom were examined by the court and found to be duly qualified to serve as jurors in the case.

The clerk handed each party a duplicate list of 28 jurors of those found qualified, from which to select 12 jurors to try the defendants, leaving 5 out of which 2 additional jurors could be selected as alternates. The defendants complained that the clerk was without authority to select the list of 28 from the 33 who had been found to be qualified to serve in the case, that they should have been chosen by lot; but there is no federal statute or rule of court requiring any selection by lot after the first drawing.

The defendants also complained that the names of the jurors appearing were arranged by the clerk in an order that was in some way prejudicial to the defendants, but both these complaints appear to be without merit. It should be remembered that a respondent's right is not one of selection, but only of rejection. Kloss v. United States (C.C.A.) 77 F.(2d) 462.

From the list of 28 presented to each party, the defendants challenged peremptorily 10 and the government challenged peremptorily 6, leaving a panel of 12 as constituting the jury for the trial of the defendants. No one of the 12 was challenged by the defendants for cause. The judge presiding found that each member of the panel was qualified to serve as a juror in the case, and each took the oath to bring in a verdict according to the law and the evidence. Simpson v. United States (C.C.A.) 184 F. 817, 819.

We think no prejudice resulted to the defendants from the manner of selecting the jury. Cain v. United States (C.C.A.) 19 F.(2d) 472; Tierney v. United States (C.C.A.) 280 F. 322, 326; Kelly v. United States (C.C.A.) 293 F. 689; St. Clair v. United States, 154 U.S. 134, 147, 148, 14 S. Ct. 1002, 38 L.Ed. 936; Pointer v. United States, 151 U.S. 396, 405–412, 14 S.Ct. 410, 38 L.Ed. 208.

On a motion for a new trial on the ground that three of the jurors on the panel which tried the defendants were prejudiced against the defendants, the defendants presented the affidavits of several parties who alleged that the three jurors named had, prior to the trial, expressed an opinion prejudicial to the defendants. The jurors named presented counter-affidavits denying the alleged conversations referred to in the defendants' affidavits, and set forth that, while the case excited great public interest on the Island and may have been discussed by them, they were not prejudiced against the defendants. The court found that, in accordance with their oaths, they were able to bring in a verdict in accordance with the law and the evidence and denied the motion. No abuse of discretion appears in the denial of this motion.

As to the defendants' assignments of error that incompetent and irrelevant evidence was admitted which failed to justify, support, or maintain the verdict as to any of the defendants, and had a tendency to prejudice the jury against the defendants,

the charge is that the several defendants conspired together and by speeches and by articles printed in the several newspapers and by circulars, sought to induce the members of the Nationalist Party of Puerto Rico and others to bring about the political independence of Puerto Rico from the United States by force and violence and by armed revolution.

Evidence was introduced of speeches made at various places by Albizu, who was the head and leader of the conspiracy, if one existed, which were clearly designed to incite his followers and members of the Nationalist Party to oppose the authority of the United States with force and to an armed revolution against the United States and to resist the authority thereof.

In a speech at Mayaguez in August, 1932, Albizu said "that if the insular police by order of the government should kill any Nationalist, they would kill the Governor"; that at Humacao about two years ago he said he could explode a bomb or fire a shot from a revolver and that it would hit the head of the insular police in San Juan; that in the Plaza de Armas at San Juan in 1934 Albizu declared that every Puerto Rican home should be converted into an armed arsenal, in order to overthrow by means of force the Yankee imperialism in Puerto Rico; that in the Plaza Munoz Rivera in October, 1935, he said that the citizens must prepare and arm themselves with revolvers, rifles, and shotguns and machetes in order to overthrow the American government, cutting their heads off; and again in August, 1934, he said that the people of Mayaguez were a lot of cowards; that instead of receiving President Roosevelt with flowers, they should have received him with bullets.

Following these exhortations to arm, there was much shooting of both policemen and Nationalists, and finally Colonel Riggs, chief of police, was shot by Nationalists while returning from church, which Albizu attributed to the oath previously taken at his suggestion at the interment of certain Nationalists in a former encounter with the police.

There was also evidence of the attendance of Corretjer, Luis Velazquez, Velez, Erasmo Velazquez, and Juan Gallardo Santiago at a convention of the national council of the Nationalist Party at Caguas held in December, 1935, at which Albizu spoke for two hours, concluding with the appeal: "To arms, to arms!" saying, among other things, "that the Nationalists should prepare themselves with arms suitable not for picking teeth, but that shot well, and that the citizens should be in a position to repel by any means, even by killing, an illegal search."

The defendant Corretjer was the secretary of the convention, and the defendants Luis F. Velazquez, Clemente Soto Velez, Erasmo Velazquez, and Juan Gallardo Santiago acted as members of one or more of the committees of the convention and participated in its deliberations. Evidence was also introduced that the convention adopted several revolutionary resolutions, to wit, a resolution to abstain from voting and declaring for universal obligatory military service; and a resolution calling upon the United States government to evacuate the Island of Puerto Rico, and that it was a part of the resolution that if the United States did not accede to the suggestion to peacefully evacuate, Nationalists would resort to arms. One of the witnesses for the government, a reporter for the newspaper, El Mundo, but who was a Nationalist and obviously an unwilling witness, admitted that, although he could not state that the alternative that the Nationalists would resort to arms in case the United States did not peaceably evacuate Puerto Rico, was a part of a resolution, he did state that it was suggested by some one on the stage and was received with great applause at the convention consisting of 1,500 to 2,000 members.

Another witness testified that the resolution adopted by the Nationalist convention at Caguas contained the alternative that if the United States did not evacuate peacefully the Island, the Nationalists would resort to arms, and it was received by the convention "with thunderous applause."

Evidence of the nature and purpose of the conspiracy of the Nationalist Party was contained in several editions of the newspaper, La Palabra, which was published weekly by Corretjer, beginning in October, 1935, and copies of which were admitted in evidence, and which contained articles urging the members of the Nationalist Party to unite in opposition to the authority of the United States. Albizu and Corretjer issued a decree on January 1, 1936, calling for recruiting of soldiers, which was printed in the La Palabra in its issue of January 13, 1936, which decree was issued pursuant to a resolution of the Na-

tionalist convention at Caguas on December 8, 1935.

The defendants objected to the introduction of copies of the newspaper, La Palabra, which contained many articles disclosing the purpose of the conspiracy, on the ground that it was not sufficiently identified as the paper published and owned by Corretjer; but the several issues of this paper introduced in evidence bore no signs of being spurious, as was intimated by the defendants' counsel might be the case, and we think, bear on their face evidence of their authenticity, Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799. The District Judge must have so found. The source from which they were obtained does not appear; but no objection was raised to their introduction as evidence except that they were not identified as being the property of Corretjer, and with the further objection that articles appearing therein were not the original of any writings made by Corretjer or by any of the defendants. We think, however, that the several copies of La Palabra were properly admitted. The papers contained articles in the same vein as the public speeches of the leaders of the conspiracy. With Corretjer's admission that he was the owner of the paper and its editor, he was responsible for the matter it contained. There was also evidence of articles of similar import contained in the newspapers known as Armas edited by the defendant Velez, and El Mundo and in the El Intransigente.

There was testimony by a witness that there was a recruiting office in the plaza of the defendant Pablo Rosado Ortiz in San Juan, and that there was a collection box on the table with the legend: "Cooperate with your contributions to buy arms for the Liberating Army." Several other witnesses testified to such recruiting offices at other places on the Island, and seeing recruiting going on by Nationalists.

A circular was introduced in evidence, issued by the defendants Erasmo Velazquez and Clemente Soto Velez, which was entitled: "War, war!" Arms were seized by the police at the Nationalist headquarters in Mayaguez, including rifles, bombs, and sabres.

There was also introduced a regulation issued to Nationalists by the defendant Julio H. Velazquez, commander of infantry, which contained a complete exposition of the training of troops and the various infantry weapons.

There was much evidence of shooting and other violence in which members of the Nationalist Party were engaged that was clearly the result of the incendiary and revolutionary speeches of Albizu and of the matter published in La Palabra by Corretjer, and in the other papers referred to, particularly in Armas published by the defendant Velez, and in accordance with the resolutions adopted at the convention at Caguas on December 8, 1935.

We think the evidence abundantly sustains the charges in the indictment: That the several defendants were all guilty under the first count; that they joined together to induce, incite, and encourage members of the Nationalist Party to join with them to bring about the independence of Puerto Rico by armed revolution against the United States; and that all of the defendants, except Pablo Rosado Ortiz, were guilty under the second count of conspiring with others to incite rebellion and insurrection against the authority of the United States; and that the defendant Pablo Rosardo Ortiz was guilty under the first and third counts of inciting members of the Nationalist Party to join with the defendants to effect the independence of Puerto Rico by armed revolution against the United States and of recruiting an army for that purpose.

We do not think that the remarks of the government's counsel, in characterizing one of the defendants in addressing the jury, were so prejudicial to that defendant as to require a new trial. It does not appear that objection was taken to them at the time. If they had been, the court would, undoubtedly, if it had appeared to him that they might be prejudicial, have cautioned the jury in relation thereto. His charge was eminently fair.

We find no error in the charge of the presiding judge to the jury. He cautioned the jury that they must be governed solely by the evidence introduced before them. The error complained of that he erroneously directed a verdict of guilty against the defendants Clemente Soto Velez and Erasmo Velazquez is without merit. This error relates to certain instructions given to the jury after they had retired in response to a question by one of the jurors, but these instructions must be interpreted in connection with instructions

previously given, and no such inference is to be drawn from the entire charge.

█ A conspiracy once proven, acts and statements made by one of the co-conspirators, may be considered against all while the conspiracy continues.

Again, no exceptions were properly taken to the charge before the jury retired, and while errors not assigned may be considered by the court to prevent a miscarriage of justice, we find no errors in the judge's charge that requires our consideration.

It is not possible in this opinion to refer to all the evidence against the defendants and in support of the conspiracy charged in the indictment, or to consider separately the many assignments of error not urged in the defendants' brief. Except so far as they may be adverted to in this opinion, we think they do not require further consideration.

The judgment of the District Court is affirmed.