LUISA GUADALUPE DE VÉLEZ RIECKEHOFF, ETC., Petitioner, *v.* JUAN S. BRAVO, WARDEN OF THE DISTRICT JAIL OF SAN JUAN ET AL., Respondents.

No. 465. Argued November 27, 1950.—Decided December 18, 1950.

914

*Rafael V. Pérez Marchand* and *Santos P. Amadeo* for petitioner.
*Vicente Géigel Polanco, Attorney General, J. Rivera Barreras,
Fiscal of the Supreme Court,* and *Frank Vizcarrondo Vivas,
Assistant Fiscal,* for respondents.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

Luisa Guadalupe de Vélez filed in this Court a petition for habeas corpus on behalf of her husband, Carlos Vélez Rieckehoff, alleging that the latter has been detained since November 4 last and that ever since, she as well as Attorneys Santos P. Amadeo and R. Pérez Marchand, whom she designated

to defend her husband, have been prevented from communicating with him. That under the pretext that the detained party is a Nationalist, charged with a violation of Act No. 53 of 1948 (Spec. Sess. Laws, p. 170) and by virtue of a Regulation issued by the Attorney General on November 16, last, the aforesaid attorneys have been forbidden, together or separately, from communicating with the prisoner, requiring them as a prerequisite to interviewing him, to comply with the provisions of the Regulation above mentioned and especially with the provisions contained in the Circular Letter of November 21 last, issued by the same officer. These provisions, insofar as pertinent, respectively, may be summarized as follows:

### THE REGULATION

(*a*) In order to prepare the defense of any person detained or arrested under an information in the penal institutions of Puerto Rico, counsel shall be permitted to confer with a prisoner once a week, unless they prove, in the judgment of the Warden, the necessity to see their client more often.

(*b*) In the event that a prisoner has entrusted his defense to more than one attorney, only one of them shall interview him during each visit.

(*c*) The attorney must notify to the Warden of the institution in writing at least 24 hours prior to the interview of his intention to effect same and its purpose.

(*d*) The visit shall be only between the attorney and the prisoner. No other person may be present except the penal guard in charge of the visiting room.

### THE CIRCULAR

The circular provides that the Regulation of November 16, 1950 shall apply only and exclusively to the visits of lawyers *to those detained for the recent acts of terrorism, attacks, etc.*, brought about by the leaders of the Nationalists.

The petitioner further averred that the aforesaid provisions of the Regulation and Circular Letter violate constitutional rights of her husband for the reasons she sets forth in the petition, hereinafter referred to in our discussion of the, issues raised by the petitioner. She also contended that there is no probable cause for the detention of her husband; and that the $25,000 bail required for his provisional liberty is excessive.

The petition ends with the prayer that by virtue of the writ of habeas corpus requested, the aforesaid provisions of the Regulation and Circular Letter be annulled and the detained party herein discharged for want of probable cause for his detention.

On the basis of said petition and of the memorandum of authorities attached thereto, we issued the writ of habeas corpus and on the day of the hearing the Warden of the District Jail of San Juan appeared with the prisoner. The Warden answered, denying, among other things, the lack of probable cause for the arrest; that the amount of bond fixed to decree the provisional liberty was unreasonable, and alleging that after the Regulation and the Circular Letter became effective, counsel for the prisoner have not requested from the Warden nor from any other officer permission to communicate with their client. The answer concluded by setting forth the reasons which prompted the Attorney General to approve the Regulation, and by praying for the dismissal of the petition of habeas corpus. As hereinbefore noted, we shall refer to the evidence presented when we consider separately each of the questions to be discussed in this opinion.

I

■■ Logically the existence of probable cause seems to be the first question to be considered for, in default thereof, the party detained should be forthwith discharged, without consideration of the remaining questions.

The Act alleged to have been violated is Act No. 53 of June 10, 1948. Section 1 thereof prescribed that it shall be a crime:

"1. To promote, advocate, advise or preach, wilfully or knowingly, the necessity, desirability, or expediency of overthrowing, paralyzing, or subverting the Insular Government, or any political subdivision thereof, by means of force or violence;

" . . . . . . . . . .

"3. To organize or help to organize any association, group or assembly of persons who promote, advocate, advise, or preach the overthrowing or subverting of the Insular Government, or any subdivision thereof, by means of force or violence."

For years there has been in this Island a separatist movement fostered by a group of individuals, intended to bring about the independence of Puerto Rico from the United States by force and violence. Proof of this is that in *Albizu* v. *United States*, 88 F. 2d 138 (C. A. 1, 1937), upon reviewing on appeal a judgment of the United States District Court for Puerto Rico against a group of Nationalist leaders for conspiracy to overthrow by force and violence the United States Government in Puerto Rico, the Court of Appeals for the First Circuit, after reciting the evidence introduced, said:

"There was much evidence of shooting and other violence in which members of the Nationalist Party were engaged that was clearly the result of the incendiary and revolutionary speeches of Albizu and of the matter published in La Palabra by Corretjer, and in the other papers referred to, particularly in Armas published by the defendant Vélez, [referring to Clemente Soto Vélez] and in accordance with the resolutions adopted at the convention at Caguas on December 8, 1935."

We take judicial notice of the events of the week of October 30, 1950—*De Castro* v. *Board of Commissioners*, 59 P.R.R. 673; *People* v. *Torregrosa*, 57 P.R.R. 759—which culminated in Concurrent Resolution No. 1 of the Legislative Assembly of Puerto Rico of November 8, 1950, of which we also take judicial notice. Said Resolution recites:

"WHEREAS, as a result of such tactics, members of the Nationalist group attacked the official residence of the Governor of Puerto Rico on Monday, October 30, with the intent to assassinate the Governor, and within the following 72 hours members of the Nationalist group attacked police stations, burned houses, opened fire on hospitals, and carried their campaign of tragic, suicidal mania as far as the national capital in an attempt to assassinate President Truman; . . ."

Having laid down these bases we shall now see whether the evidence presented by the *Fiscal* is sufficient to show the existence of probable cause for the detention.

The *Fiscal* presented in evidence, among others, an affidavit of José A. Rodríguez, Second Lieutenant of the Insular Police, given in Ciales on November 8, 1950 before Special District Attorney José Dávila Ortiz in which he testified that he had known the party under restraint herein since 1948, from which date he has been rendering services in Ciales, that he knows of his own knowledge that said person is a Nationalist leader and, among other things, he says in that affidavit:

". . . That I have also heard Mr. Carlos Vélez Rieckehoff say in Ciales that every Nationalist must be willing to offer his life and blood to the cause of the revolution and the independence of Puerto Rico but I have never heard him speak from a tribunal. He made these statements to groups of persons in the streets and he is constantly spreading propaganda in favor of the overthrow of the Government of Puerto Rico no matter how, including the use of weapons and revolution."

The *Fiscal* likewise introduced the affidavit of José A. Vázquez, of the Secret Police, given before the same Special District Attorney, wherein, among other things, he asserts that on December 18, 1949, during the general assembly of the Nationalist Party in Arecibo, in a recess thereof, he heard Vélez Rieckehoff say, addressing a group of Nationalists: "We must overthrow this government even if it means bloodshed." These statements, if true, coupled with the events of the week of October 30, are sufficient, in our

judgment, to establish probable cause. See *Gitlow v. New York*, 268 U. S. 652, 669 (1925).[1]

## II

The petitioner contends, however, that the practice of admitting affidavits to prove the existence of probable cause in habeas corpus proceedings is erroneous because it is based on laws and decisions of the State of California, where the accused is entitled to be present and to cross-examine the witnesses for the government in the preliminary examination; and that having had that opportunity it is unnecessary to give him that opportunity again when the same affidavits or any of them are subsequently presented in evidence in a habeas corpus proceeding to prove the existence of probable cause for the detention. But the Supreme Court of the United States has held that the preliminary hearing of other jurisdictions forms no part of due process of law. *Lem Woon v. Oregon*, 229 U. S. 586 (1913); *Palko v. Connecticut*, 302 U. S. 319 (1937). Hence, by receiving in evidence herein the affidavits to prove the existence of probable cause, Vélez Rieckehoff was not deprived of due process of law, for if said affidavits are sufficient to warrant the bringing of an action, without the detained party having had the opportunity to cross-examine the adverse witnesses, they must be sufficient *a fortiori* to establish the probable cause which warrants the denial of habeas corpus, if prima facie said affidavits tend to show the commission of the crime charged. Otherwise, every accused, by filing a petition for habeas corpus,

---

[1] The Supreme Court of the United States has held that in order that the application of a statute abridging the freedom of speech may be valid, when the utterances are inimical to the public welfare, it must be proved that there is a clear and present danger that such subversive ideas will bring about the evil which the statute attempts to prevent. *Communications Assn. v. Douds*, 339 U. S. 382 (1950); *Schenk v. United States*, 249 U. S. 47 (1919) and see also *United States v. Dennis*, 183 F. 2d 201 (C. A. 2, 1950), certiorari granted in 340 U. S. 863. Taking into consideration the contents of this opinion and of the record in connection with the existence of probable cause, we believe that the clear and present danger contemplated by the decisions existed in this case.

would obtain the preliminary hearing which the statute does not grant him and which, as we have seen, is not an integral part of due process of law.

## III

█ The petitioner further contends that the affidavits in question did not entitle the District Attorney to order the commitment because according to her the magistrate ordering the commitment must be the same who investigates the case.

In support of her theory she cites § 72 of the Code of Criminal Procedure which contains a model that the District Attorney may follow in drawing up the information and wherein it is indicated that at the end of the information District Attorney shall state under oath that said information is based upon the sworn testimony of witnesses examined by him. To the same effect she cites *Ex Parte Williams*, 199 P. 347 (Cal. Dist. Ct. App., 1921).

In Puerto Rico, unlike California, and by virtue of §§ 45 and 46 of the Code of Criminal Procedure,[2] municipal judges and even justices of the peace are authorized to conduct the investigation in cases of alleged felonies, and based on such testimony the District Attorney may file the information. Section 3 of the Code of Criminal Procedure. If under such circumstances the District Attorney may file the information, he obviously has the power to order commitment.

---

[2] Sections 45 and 46 of the Code of Criminal Procedure provide:

"Section 45.—Whenever any person is charged with an offense not triable before the justice of the peace the said justice shall, upon an investigation as to whether the offense charged has been committed, and if the justice of the peace be satisfied that the offense has been committed and there exist probable cause that the defendant has committed the same, he shall remand the defendant to jail or admit him to bail, as the case may be, for his appearance before the district court. to answer said charge. If there be no evidence that an offense has been committed or no probable cause showing the defendant's connection therewith, he shall be discharged.

"Section 46.—In cases of felony, if the justice of the peace desires the attendance of the prosecuting attorney at the examination, the prosecuting attorney may appear provided he is not engaged in criminal proceedings in court."

## IV

■ The detained party complains that the bond fixed herein is excessive and protests that all his efforts to obtain sureties in that sum have been useless because of the amount thereof, as well as because he is a Nationalist. To support his theory, counsel for the detained party called the petitioner first to the witness stand. She said that she had taken certain steps to obtain sureties for her husband and that they had been fruitless. On cross-examination by the *Fiscal* she testified that in Ciales she had approached Antonio Vicens, Alvaro Corrada, Santiago Ruiz, and no one else. She also states that the property which her husband holds under a lease belongs to his aunt, yields about 60 cwts. of coffee and finally, upon being questioned by one of the Judges of this Court, she replied that in her opinion she would be unable to get sureties in any amount exceeding $8,000 or $10,000.

The detained party himself testified as the second witness. He stated that he has lived in Ciales for four years and knows intimately none of the residents of Ciales and that these persons would not furnish him with bail because he is a Nationalist; that none of his relatives, as far as he knows, could furnish bond for him for any amount exceeding $5,000; that his aunt, Ana Rieckehoff, could nor furnish bond for the property she leased to him is subject to a mortgage for $10,000 in favor of The Federal Land Bank of Baltimore.

In our judgment, despite the financial condition of the detained party, the nature of the crime charged and the few steps taken in order to obtain sureties, do not warrant the reduction of the amount of bail.

## V

■ It is alleged in the petition that by virtue of the Regulation and of the Circular Letter, the attorneys were prevented from visiting the detained party, unless they notified

in writing, 24 hours in advance, their intention to visit him, and that even on such notice only one of them could visit each time the party involved here. The Warden denied this allegation, but in view of the evidence we think it is a fact that after the Regulation and the Circular Letter were issued, Attorneys Amadeo and Pérez Marchand verbally asked permission, first from the Assistant of the Warden and later from the Warden, which was denied unless they complied with the provisions of the Regulation. In fact, the Regulation, in regard to those particulars, does provide as follows:

"3. Visit of only one attorney: In the event that an accused has entrusted his defense to more than one attorney, only one of the attorneys for his defense shall see him at each visit.

"4. Other requirements: . . .

"(c) The attorney shall notify the Warden of the institution in writing, at least 24 hours prior to the interview, of his intention to make such interview and the purpose therefor."

In regard to these questions, the uncontroverted testimony of the Warden was to the effect that the building in which the District Jail of San Juan is located was constructed over a century ago and has a normal capacity of only 450 prisoners, that a week prior to the hearing of this proceeding there were over 900 prisoners in said jail and that on the day of the hearing there were 632. The building lacks the conditions necessary for the good operation of a modern penal institution. Thus we see that it has only one room for conferences between attorneys and prisoners, which measures 18 feet long by 10 feet wide. And if we consider the words which, as a statement of motives, the Attorney General set forth at the beginning of the Regulation,[3] it does not seem unreasonable

---

[3] WHEREAS, on account of the recent happenings in Puerto Rico the number of prisoners in the penal institutions has unusually increased;

"WHEREAS, the number of prisoners exceeds in many instances the capacity of the penal institutions, creating serious difficulties which affect the operation and discipline of said institutions;

"WHEREAS, the site of the penal institutions does not offer adequate facilities to interview more than one prisoner at a time without endangering the discipline of the institution and the safety of the prisoners;

924

to require the attorneys to notify the Warden 24 hours in advance of their intention to confer with a prisoner. In this manner the proper arrangements can be made in order that two or more attorneys of different prisoners will not meet at the same time in the small place devoted to conferences, above all having in mind that after the Regulation and the Circular Letter were issued, and this petition was filed, the Warden received verbal instructions from the Attorney General allowing him to refrain from exacting compliance with this requirement whenever circumstances permitted it.

█ With respect to the limitation of the number of attorneys who may confer with a prisoner, we think that under the circumstances herein it is unreasonable. This is so because only one prisoner will occupy the conference room on a given time, unless there are various prisoners who, because they have a common defense, have the same attorneys. In view of this circumstance and keeping in mind the objective of the Regulation, namely, the discipline of the penal institution and public safety, there is no reason to prevent two attorneys as in this case from conferring with their client.

Although it is true that pursuant to the verbal instructions the Warden would permit more than one attorney to confer with a prisoner at a time, this, however, contrary to what happens with regard to the provision referring to the number of visits, would not alter the unreasonableness of the regulations for with respect to the visits, the Warden would permit more than one per week whenever the circumstances

"WHEREAS, every prisoner is entitled, pursuant to our Organic Act and the Constitution of the United States of America, to avail himself of an attorney and to prepare his defense on the charge for which he has been confined;

"WHEREAS, under the aforesaid circumstances visits of attorneys to penal institutions will not take place as usual, but rather, for the personal safety of attorneys and prisoners, and the discipline of the institution, said visits must be regulated in such a manner as to coexist with each other without prejudice to either of them;

"WHEREFORE, in virtue of the authority vested in me by law, I hereby issue the following regulations for interviews between attorneys and prisoners in the different penal institutions of Puerto Rico: . . ."

and facilities permitted it, whereas with respect to the number of attorneys the circumstances and facilities play no role for, as we have seen, not more than one interview at a time will be held in the conference room, and the fact that there were two attorneys could not affect the safety of the institution.

 Other paragraphs of the Regulation prescribe:

"2. Visiting days: Counsel shall be permitted to see a prisoner once a week, unless in the opinion of the Warden he proves the need to see his client more than once a week.

". . . . . . . . . . .

"5. The visit will be only and exclusively between the attorney and the prisoner. No other person should be present except the penal guard in charge of the custody of the visiting room."

Due to the number of prisoners in the aforesaid jail, the rule limiting visits to one a week, as modified by the verbal instructions of the Attorney General,[4] is not unreasonable for the case might arise wherein several attorneys of different prisoners might want to confer with them on the same day, and it would be impossible to please everyone since each prisoner should be given an opportunity to confer with his attorney.

 We can not agree that the presence of a penal guard at a distance from where he can not listen to the conversation between attorney and client prejudices the substantial rights of a person under restraint. To this effect we must not lose sight of the Warden's testimony to the effect that the penal guard settles himself at such a distance that he is unable to hear the conversation between the attorney and the prisoner, and especially, if the latter takes the precaution not to talk in such a loud tone that their conversation may be heard.

---

[4] As may be seen from the context of the opinion, we have considered as part of the Regulation, the verbal instructions given by the Attorney General to the effect that whenever circumstances permitted it, the Warden should permit a visit at any time.

 Finally, we have to consider whether the Regulation, as amended by the Circular, to the effect that it shall apply only and exclusively to the visits made to those charged with the recent acts of terrorism, attacks, etc., brought about by the leaders of the Nationalist party, establishes an arbitrary classification consequently deprives them of the equal protection of the laws.

For the purpose of the instant case, the question to be decided in connection with this point is whether for safety purposes a distinction may be lawfully established between persons detained for subversive activities and other persons under restraint who are charged with crimes of a different nature.

We have noted that during the week of October 30, there was a revolt in Puerto Rico of which we have taken judicial notice when discussing the existence of probable cause. It also appears from the Circular establishing this classification that: "The regulation issued on November 16 instant shall apply only and exclusively to the visits on Nationalist or Communist attorneys *to those charged with the recent acts of terrorism, attacks, etc.,* brought about by the leaders of the Nationalist Party of Puerto Rico and to other attorneys visiting said persons." (Italics ours.)

In view of the evil that the Regulation intends to prevent and the nature of the crime charged to those restrained for their alleged participation in the acts of terrorism, attacks, etc., above mentioned, it does not seem unreasonable to establish a classification regarding safety measures between one class of prisoners and another. It might be argued that since they have not been convicted yet, they must be presumed innocent and a more burdensome regulation should not be imposed on them than on those detained for other crimes and who are also presumed to be innocent. But as we have pointed out, the measures established by the Regulation are intended to attain the discipline of the institution and the safety of the prisoners, taking into consideration the acts of

rebellion and terrorism above mentioned. Consequently, the classification is neither capricious or arbitrary, being, as it is, based on such recent experience.

And with regard to the presumption of innocence, it has no connection with the precautions which must be taken in every penal institution in order to prevent those held under restraint from escaping or risk the discipline of the institution or the safety and welfare of the other prisoners. Such measures do not prejudge in any manner whatsoever the guilt of those restrained.

In view of the foregoing the Warden of the District Jail of San Juan should be ordered to permit Attorneys Santos P. Amadeo and R. Pérez Marchand to confer jointly with the detained party, provided that compliance is had with the remaining provisions of the Regulation as construed in this opinion. As to the other points, the petition of habeas corpus is dismissed.